**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

———————————————————————

|   |   |
|---|---|
| **TADESSE WELDAY TEKLE,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) |
| | )   **Case No. 21-cv-1655 (APM)** |
| **ANTONY BLINKEN et al.,** | ) |
| | ) |
| **Defendants.** | ) |
| | ) |

———————————————————————

<u>**MEMORANDUM OPINION**</u>

**I.**

Plaintiff Tadesse Welday Tekle is a United States citizen who has filed visa applications
on behalf of his wife and son, both citizens of Ethiopia. Pet. for Writ of Mandamus & Compl. for
Inj. Relief., ECF No. 1 [hereinafter Compl.], ¶ 1. A person seeking to sponsor foreign relatives
for immigrant visas must file a Form I-130 (Petition for Alien Relative) with the United States
Citizenship & Immigration Services ("USCIS"). *See* 8 U.S.C. § 1154; 8 C.F.R. § 204.1(a)(1)
(2022). If USCIS approves the petition, then the petition is sent to a State Department processing
center. 8 C.F.R. § 204.2(a)(3) (2022). The foreign relatives must then submit another application
and await an interview with a consular officer. 22 C.F.R. §§ 42.61, 42.62 (2022). After the
interview, generally speaking, "the consular officer must [either] issue the visa, [or] refuse" it. *Id.*
§ 42.81(a).

Plaintiff alleges that he properly filed Form I-130s on behalf of his wife and son in July
2018. Compl. ¶ 12. USCIS approved both petitions in December of that same year. *Id.* His wife
had an interview in July 2019 at the U.S. Embassy in Ethiopia, during which, Plaintiff asserts, she
truthfully responded to all questions and provided all information requested. *Id.* ¶ 14. However,

her and her son's applications have lingered in "administrative processing" since the interview. *Id.* ¶ 15 (internal quotation marks omitted). Plaintiff alleges, given the passage of time, that Defendants "are unlawfully withholding or unreasonably delaying action" on the applications and that they "have failed to carry out the adjudicative functions delegated to them by law." *Id.* ¶ 19. Plaintiff ultimately requests an order by this court "requiring Defendants to complete the adjudication process." *Id.*

Plaintiff's action asserts two claims: one under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701, and another under the Mandamus Act, 28 U.S.C. § 1361. He brings this action against a variety of Defendants, naming Secretary of State Antony Blinken; Acting Director of USCIS Tracy Renaud; Attorney General Merrick Garland; Secretary of the Department of Homeland Security ("DHS") Alejandro Mayorkas; Acting Legal Adviser of the Department of State Richard C. Visek; Federal Bureau of Investigation ("FBI") Director Christopher Wray; Acting Assistant Secretary of the Bureau of Consular Affairs Ian G. Brownlee; and Deputy Chief of Mission of the U.S. Embassy in Ethiopia David Renz (collectively, "the Government"). Compl. ¶¶ 6–10. The Government has moved to dismiss under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. *See* Defs.' Mot. to Dismiss & Mem. in Supp. Thereof, ECF No. 4 [hereinafter Defs.' Mot.]. Along with his opposition, Plaintiff filed a motion for summary judgment. *See* Pl.'s Mot. for Summ. J., ECF No. 6 [hereinafter Pl.'s Mot.]; *see also* Pl.'s Mem. of P. & A. in Opp'n to Defs.' Mot. & in Supp. of Pl.'s Mot. for Summ. J., ECF No. 5 [hereinafter Pl.'s Opp'n].

For the reasons that follow, Defendants' motion to dismiss is granted and Plaintiff's motion for summary judgment is denied as moot.

## II.

When deciding a motion under Rule 12(b)(1), a court must accept all well-pleaded factual allegations in the complaint as true.  *See Jerome Stevens Pharm., Inc. v. FDA.*, 402 F.3d 1249, 1253 (D.C. Cir. 2005).  Because the court has "an affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority," however, the factual allegations in the complaint "will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim."  *Grand Lodge of Fraternal Ord. of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13–14 (D.D.C. 2001) (internal quotation marks omitted).  To that end, the "court may consider such materials outside the pleadings as it deems appropriate to resolve the question whether it has jurisdiction to hear the case."  *Scolaro v. D.C. Bd. of Elections & Ethics*, 104 F. Supp. 2d 18, 22 (D.D.C. 2000).  Thus, "where necessary, the court may consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."  *See Coal. for Underground Expansion v. Mineta*, 333 F.3d 193, 198 (D.C. Cir. 2003) (internal quotation marks omitted).

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  The factual allegations in the complaint need not be "detailed," but the Federal Rules demand more than "an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Id.*  In evaluating a motion to dismiss under Rule 12(b)(6), the court must accept a plaintiff's factual allegations as true and "construe the complaint in favor of the plaintiff, who must be granted the benefit of all inferences

that can be derived from the facts alleged." *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (internal quotation marks omitted).   The court need not accept as true either "legal conclusion[s] couched as . . . factual allegation[s]," *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or "inferences . . . unsupported by the facts set out in the complaint," *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).   If the facts as alleged fail to establish that a plaintiff has stated a claim upon which relief can be granted, then a court must grant the defendant's Rule 12(b)(6) motion.   *See Am. Chemistry Council, Inc. v. U.S. Dep't of Health & Hum. Servs.*, 922 F. Supp. 2d 56, 61 (D.D.C. 2013).

### III.

The Government moves to dismiss on three grounds:  (1) Plaintiff "names a host of officials that cannot provide Plaintiff the sought-after relief"; (2) Plaintiff's claims are subject to the consular non-reviewability doctrine; and (3) with regard to the merits of the case, the delay "is not unreasonable as a matter of law."  Def's Mot. at 7.[1]  Because the court agrees with the first and third of these arguments, it does not address consular non-reviewability.  *See Baan Rao Thai Rest. v. Pompeo*, 985 F.3d 1020, 1027 (D.C. Cir. 2021) (holding that dismissal based on consular non-reviewability is not jurisdictional)

### A.

Plaintiff names as Defendants officials from USCIS, DHS, the Department of Justice, and the FBI.  USCIS and DHS, however, have completed their portions of Plaintiff's family's visa-application review by approving his wife and son's initial applications and thus no longer have any role in visa processing.  As for DOJ and the FBI, neither agency has any evident role in the Tekle family's visa processing.  Because Plaintiff's injuries cannot be traced to any of these

---

[1] The court uses ECF pagination for Defendants' Motion to Dismiss.

agencies, Plaintiff lacks standing as to them.  *See, e.g.*, *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (outlining the requirements of standing, including "a causal connection between the injury and the conduct complained of").

Plaintiff's only response to shore up standing against these Defendants is that "the USCIS policy Controlled Application Review and Resolution Program (CAARP)" is "[a]t issue."  Pl.'s Opp'n at 7.  But the CAARP program is nowhere mentioned in his Complaint, and "[i]t is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss." *Arbitraje Casa De Cambio, S.A. DE C.V. v. U.S. Postal Serv.*, 297 F. Supp. 2d 165, 170 (D.D.C. 2003) (internal quotation marks omitted).  As a result, the court dismisses the DHS, USCIS, DOJ, and FBI officials from this action.

## B.

The court now turns to the merits of Plaintiff's unreasonable-delay claim under the standard for motions to dismiss brought under Rule 12(b)(6).  Plaintiff claims that the Government has unreasonably delayed adjudicating his wife's visa application and seeks relief for that delay under the APA.  *See* Compl. ¶¶ 24–35.  The APA "imposes a general but nondiscretionary duty upon an administrative agency to pass upon a matter presented to it 'within a reasonable time,' and authorizes a reviewing court to 'compel agency action unlawfully withheld or unreasonably delayed.'"  *Mashpee Wampanoag Tribe Council, Inc. v. Norton*, 336 F.3d 1094, 1099 (D.C. Cir. 2003) (quoting 5 U.S.C. §§ 555(b), 706(1)).  "There is no *per se* rule as to how long is too long to wait for agency action."  *In re Am. Rivers & Idaho Rivers United*, 372 F.3d 413, 419 (D.C. Cir. 2004) (internal quotation marks omitted).  Instead, courts apply the six factors set forth in *Telecommunications Research & Action Center v. FCC* (*TRAC*), 750 F.2d 70, 80 (D.C. Cir. 1984):

      (1) The time agencies take to make decisions must be governed by a rule of reason;

      (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;

      (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;

      (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;

      (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and

      (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is "unreasonably delayed."

*In re People's Mojahedin Org. of Iran*, 680 F.3d 832, 836–37 (D.C. Cir. 2012).  The question whether a delay is unreasonable "cannot be decided in the abstract, by reference to some number of months or years beyond which agency inaction is presumed to be unlawful."  *Mashpee Wampanoag Tribal Council*, 336 F.3d at 1102.  Instead, it "will depend in large part . . . upon the complexity of the task at hand, the significance (and permanence) of the outcome, and the resources available to the agency."  *Id.*

      TRAC *Factors One and Two.*  Courts usually assess the first two *TRAC* factors in tandem.  *Dastagir v. Blinken*, 557 F. Supp. 3d 160, 165 (D.D.C. 2021).  Congress did not provide a statutory deadline to complete processing or adjudication of visa applications.  In fact, "Congress has given the agencies wide discretion in the area of immigration processing."  *Skalka v. Kelly*, 246 F. Supp. 3d 147, 153–54 (D.D.C. 2017).  Where there is no timeline or guidance provided by statute, "courts typically turn to case law as a guide."  *Sarlak v. Pompeo*, No. 20-cv-35 (BAH), 2020 WL 3082018,

at *6 (D.D.C. June 10, 2020).  Courts in this District consistently have held that two or three years does not constitute an unreasonable delay.  *See, e.g.*, *Ghadami v. U.S. Dep't of Homeland Sec.*, No. 19-cv-397 (ABJ), 2020 WL 1308376, at *8 (D.D.C. March 19, 2020) ("[M]any courts evaluating similar delays have declined to find a two-year period to be unreasonable as a matter of law." (citing cases)); *Dastagir*, 557 F. Supp. 3d at 165 ("Even if the Court started the clock when [the plaintiff] filed the petition five years ago, several of this district's courts have noted that delays between three to five years are often not unreasonable." (internal quotation marks omitted)); *Skalka*, 246 F. Supp. 3d at 154 (collecting cases concluding that delays of four and a half, five, and ten years were not unreasonable in different immigration contexts).  Plaintiff's contention that delays of this length occur only in other visa contexts, Pl.'s Opp'n at 11, is not correct.  *See, e.g.*, *Dastagir*, 557 F. Supp. 3d at 165 (finding spousal-visa application pending for 29 months not unreasonable); *Mahmood v. U.S. Dep't of Homeland Sec.*, No. 21-cv-1262 (RC), 2021 WL 5998385, at *7–9 (D.D.C. Dec. 20, 2021) (finding spousal visa application pending for 25 months not unreasonable); *Ghadami*, 2020 WL 1308376, at *8 (finding relative visa pending for 25 months not unreasonable).  Here, the last agency action occurred in July 2019, approximately 23 months before Plaintiff filed suit in June 2021.  *See* Compl. ¶ 14.  Even if the court were to take account of the ensuing ten months, a 33-month delay is not unreasonable.

Plaintiff points to 8 U.S.C. § 1571 as a statutory timetable for the processing of visa applications.  Pl.'s Opp'n at 10.  That provision says that "[i]t is the sense of Congress that the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application."  But "[s]everal courts, including the D.C. Circuit, have recognized that a sense of Congress resolution is not law."  *Palakuru v. Renaud*, 521 F. Supp. 3d 46, 51 (D.D.C. 2021) (internal quotation marks omitted) (citing *Emergency Coal. to Defend Educ.*

*Travel v. U.S. Dep't of Treasury*, 545 F.3d 4, 14 n.6 (D.C. Cir. 2008), and other cases).  And, even when this 180-day period is considered as some indication of the speed with which Congress expected the agency to act, courts still have found the first two *TRAC* factors to favor the Government.  *See Palakuru*, 521 F. Supp. 3d at 51–52.

As further evidence of unreasonableness, Plaintiff points to a recent USCIS Notice of Rulemaking, which estimated that even complex immigrant applications take between 2.22 and 4.10 "adjudication hours."  Pl.'s Opp'n at 11–12 (citing U.S. Citizenship and Immigration Services Fee Schedule and Changes to Certain Other Immigration Benefit Request Requirements, 84 FR 11 62280, 62292 (proposed Nov. 14, 2019)).  But knowing how many "adjudication hours" are required to "adjudicate" a visa tells the court nothing about the length of a queue or what is a reasonable processing time in the ordinary lifecycle of a relative visa application.  The cases cited above establish that such reasonableness is measured in months, not "adjudication hours."

TRAC *Factors Three and Five.*  The third and fifth *TRAC* factors, which consist of the nature of delays and any prejudice suffered therefrom, together favor Plaintiff.  Plaintiff alleges, and it is no doubt true, that the Government's failure to finally adjudicate his relative applications "has had a profound and negative impact on the lives of Plaintiff and his wife and son."  Compl. ¶ 18.  He also describes the current war in the Tigray region of Ethiopia, which has reduced his ability to travel to his home country, contact his family, and send money from his employment in the United States to Ethiopia with knowledge and faith that his family will receive it.  Pl.'s Mot., Decl. of Tadesse Welday Tekle, ECF No. 6-3, ¶¶ 19–24.  Indeed, he has not had any contact with his family since April 2021.  *Id.* ¶ 21.  "Plaintiff['s] interest in receiving a decision is undeniably significant."  *Ghadami*, 2020 WL 1308376, at *9.

TRAC *Factor Four.*  The fourth *TRAC* factor evaluates how expediting this application might impede other agency priorities and "carries the greatest weight in many cases[.]"  *Milligan v. Pompeo*, 502 F. Supp. 3d 302, 319 (D.D.C. 2020).  Even when all other *TRAC* factors lie in a plaintiff's favor, the D.C. Circuit has refused a grant of relief "where a judicial order putting the petitioner at the head of the queue would simply move all others back one space and produce no net gain."  *Mashpee Wampanoag Tribal Council*, 336 F.3d at 1100 (alterations omitted).  Plaintiff attempts to avoid this precedent by asserting that his family is already at "the front of the line, simply awaiting the consular officer's completion of administrative processing."  Pl.'s Opp'n at 13.  But this assertion is entirely speculative:  Plaintiff offers no evidence establishing where his family stands in the processing queue.  What is not speculative, however, is that if the court were to grant the relief Plaintiff seeks, it would divert resources from other processing priorities to Plaintiff's family's applications.   The court cannot override the agency's "unique—and authoritative—position to view its projects as a whole, estimate the prospects for each, and allocate its resources in the optimal way."  *Ghadami*, 2020 WL 1308376, at *9 (internal quotation marks omitted) (quoting *In re Barr Lab'ys, Inc.*, 930 F. 2d 72, 76 (D.C. Cir. 1991)).

TRAC *Factor Six.*  The final *TRAC* factor—the presence of impropriety—favors neither side, as Plaintiff concedes that there is no bad faith in the Government's delay.  Pl.'s Opp'n at 13.  *See Sarlak*, 2020 WL 3082018, at *6 (finding sixth *TRAC* factor to be neutral where no bad faith is alleged).

*Final Balancing.*   Considering all the factors together, Plaintiff has not stated an unreasonable-delay claim under the APA.  The court sympathizes with the hardship caused by the length of time without final adjudication of Plaintiff's family's applications, but this hardship is outweighed by the rule of reason supplied by case law and the fact that granting relief would be at

the expense of others without any net gain. *See Sarlak,* 2020 WL 3082018, at \*6 (reaching same conclusion and citing other cases also reaching that conclusion).

## IV.

This conclusion also disposes of Plaintiff's request for a writ of mandamus. "The standard by which a court reviews . . . agency inaction is the same under both § 706(1) of the APA and the Mandamus Act." *Skalka*, 246 F. Supp. 3d at 152. The D.C. Circuit has made clear that courts are to "reject[] mandamus claims that would have . . . the effect of allowing the plaintiffs to jump the line, functionally solving their delay problem at the expense of other similarly situated applicants." *Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 192 (D.C. Cir. 2016). Thus, for the reasons already discussed, the court denies Plaintiff's request for mandamus.

## V.

For the foregoing reasons, Defendants' Motion to Dismiss, ECF No. 4, is granted and Plaintiff's Motion for Summary Judgment, ECF No. 6, is denied as moot. A final, appealable order accompanies this Memorandum Opinion.

Dated: April 29, 2022

Amit P. Mehta
United States District Court Judge